Report of Committee in Favor of George J. J. Barber.
In Assembly, January 21 st, 1845.
Mr. Revin, from the committee on privileges and elections, to which was referred the petition of Abraham Acker, of the county of Cortland, praying that he may be permitted to take his seat as a member of this House in the place of George J. J. Barber, make the following report:
In Assembly, January 21, 1845.
Report of the Committee on Privileges and Elections, on the Prayer of Abraham Aker.
Mr. Riven from the committee on privileges and- elections, to whom was referred the petition of Abraham Aker of Cortland county, praying that he may be permitted to take his seat as a member of this House, in place of George J. J. Barber, reports, that your committee. have given this matter a patient investigation. A large mass of testimony, taken on the spot, in accordance with the provisions of the statute, before the first judge of the county of Cortland, and transmitted by him, under seal, to the Clerk of this House, was laid before us; and in addition thereto, one witness on the part of the sitting member was sworn and examined before us.
*147 The testimony, whether written or oral, was taken in the presence of the parties and their counsel; and every facility afforded for eliciting facts hearing upon the case. Much of the evidence adduced is of a perplexing and contradictory character; yet in thus speaking, the committee do not wish to be considered as reflecting in any degree upon the moral character of the witnesses.
Probably we should not have expected it to be otherwise under the circumstances. Por however honest men might be, the exciting nature of the contest, during which the transactions testified of, took place; and the additional fact that the canvass was so very close in Cortland county (Mr. Barber being returned by but one majority), may well induce us to suppose that party Jias'and antagonist feelings and sympathies, would lead men to form adverse opinions as to the facts and circumstances connected with the case.
' Your committee in examining the matter, beset, as it was, with difficulties and doubts, decided that where uncertainties existed, the present sitting member should be entitled to the benefit of such doubts. This we felt to be just and right, as well as in accordance with the genius of our institutions and the principles of law.
In the testimony adduced before your committee, it was ascertained that the parties had made four distinct points of controversy in reference to the election returns of said county of Cortland.
First. The petitioner avers, that in one election district in ' the town of Homer, on opening the ballot-box, a double ballot was discovered, or two ballots folded together; that they were for the whig candidates, and that they were canvassed and counted contrary to the provisions of the statute.
The second point is made by the sitting member, Mr. Barber, who introduces testimony in reference to one vote being given for Abraham Acer,, which was allowed to the petitioner.
The third allegation is made, by Mr. Barber, who proves by an inhabitant of the town of Yirgil, that he, the deponent, voted for Barber, by erasing Aker’s name from a democratic ticket, and inserting Barber’s thereon, and that when the tickets were canvassed no such ticket was found.
The fourth point is also made by Mr. Barber, who charges that in the town of Solon, in said county of Cortland, two democratic ballots were found folded together upon canvassing the votes. The testimony in reference to this charge is so very ambiguous as to induce the committee to dismiss it at once.
*148 Tour committee are of unanimous opinion, after carefully surveying the-whole ground, that the only point worthy of being entertained, is in reference to the transactions in the town of Homer.
The testimony of twelve witnesses was laid before us, as to the point at issue here; they generally agree in the statement that one of the clerks of election, in district number three in the town of Homer, while engaged in counting the ballots, either the first, second or third time of such counting, discovered two State tickets, one within the other. He stated it to the board of inspectors, and was by them desired to lay it aside until they finished counting. He held it out in such a way as that all could see it.
One electoral vote was also found in the State box, which was laid aside until the electoral ballots were examined. Upon comparing the ballots in the State box with the poll list (excluding the electoral ticket), they were found to be two short of the number on the poll list. The suspicious ballots were then examined and judged by all the board, from the position in which they were, to have got so by' accident, and' werp consequently counted as separate ballots.
The challenger for the democratic party, who was at the table at the time, swears that he then expressed his opinion that it was a correct decision, and is of the same mind yet. From all that appears in evidence it would seem that all present at the time were satisfied with the judgment of the board.
The ballots were supposed to be those of the whig party at the time, from the caption and color of the paper, but it was subsequently discovered that there were democratic tickets in the box, entirely similar in these’ respects, and consequently no positive certainty exists as to whose name was on the1 disputed ballots, Mr. Barber’s or Mr. Aker’s.
From this condensed view of the facts brought out in evidence, it will readily be perceived, as your committee think, by this House, that the conclusion is inevitable, and against the prayer of the petitioner.
Your committee would, therefore, recommend the adoption of the following resolution:
' Resolved,, That the prayer of Abraham Aker for a seat in this House, as a member from Cortland county, in j>lace of George J. J. Barbel1, ought not to be granted; but inasmuch as it is evident to the committee that the claim originated, and has been pressed from an honest persuasion, on the part of Mr. Aker, therefore, that he be *149 allowed the traveling and per diem pay of members up to this day.
All of which is respectfully submitted.
Assembly Documents, 1845, Yol. 1, No. 21.
G-eorge J. J. BaebeR Awarded Seat.
Mr. Speaker stated the question to be on ■ agreeing to the said report and resolution.
Division oe the Question.
Mr. Betts-called for a division of the question on the said resolution. Mr. Speaker put the question whether the House would agree to the first part of the said resolution, and it was determined in the affirmative.
Travel fee and per diem allowed Abraham Aker.
Mr. Speaker then put the question whether the House would agree to the second part of the said resolution, and it was determined in the affirmative.
Assembly Journal, 1845, pages 127 and 128.